UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MATT KARDOVICH, LILA CHUI, and CINDY
CHANG, on behalf of themselves and all others
similarly situated,                                          **MEMORANDUM AND ORDER**
                                                             13-CR-7378 (RRM) (VVP)

                          Plaintiffs,

               - against -

PFIZER, INC.,

                          Defendant.
---------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiffs Matt Kardovich, Lila Chui, and Cindy Chang bring a putative class action

grounded in various state statutory and common law claims, alleging that defendant Pfizer, Inc.

has engaged in pervasive and deceptive labeling of Centrum branded multivitamins.  (Am. Class

Action Compl. (Doc. No. 13).)  Before the Court is defendant's fully briefed motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Def. Mem. Supp. Mot. Dismiss (Doc. No.

17-1);  (Pls. Mem. Opp'n (Doc. No. 18));  (Def. Reply (Doc. No. 19).)  For the reasons set forth

below, defendant's motion is granted.

### A.      The Amended Class Action Complaint

      The following allegations are taken from plaintiffs' amended class action complaint, and

for purposes of this motion to dismiss are accepted as true.  *See Stratte-McClure v. Morgan*

*Stanley*, 776 F.3d 94, 97 n.1 (2d Cir. 2015).

      Defendant manufactures and sells the Centrum brand line of multivitamins, (Am. Class

Action Compl. at ¶ 56), which includes Centrum Silver Women 50+, Centrum Silver Men 50+,

Centrum Silver Adults 50+, Centrum Women, Centrum Men, and Centrum Adults (collectively,

"Centrum"), (*id.* at ¶ 2.)  Through its labeling and marketing of Centrum, defendant has created

in consumers' minds the belief that taking multi-vitamins will afford them positive health benefits and prevent illness and disease.  (*Id.* at ¶ 1.)  Centrum's packaging characterizes the product as a multivitamin/multimineral supplement, and defendant's 2012 Annual Report calls Centrum the "No. 1 selling brand of multivitamins in the world . . . ."  (*Id.* at ¶¶ 2, 16.)

Kardovich, an Illinois citizen, Chui, a New York citizen, and Chang, a California citizen, regularly purchased Centrum Silver Adults 50+, Centrum Silver Women 50+, and Centrum Adults, respectively, over a period of several years.  In making their purchases, each claims to have relied on specific representations that the products would provide health benefits and protect from illness and disease.  (*Id.* at ¶¶ 7, 8, 9.)

Specifically, plaintiffs point to "vignettes" on Centrum's packaging "indicating the different categories of positive health benefits that each product provides."  (*Id.* at ¶ 18.)  The packaging for each of these products contained three out of four of the following image and text combinations:

[1] [An orange shield above the word IMMUNITY] With antioxidants to support the normal function of the immune system.

[2] [A yellow sun above the word ENVIRONMENTAL STRESS] With vitamins C and E to help protect body's cells from free radicals damage caused by environmental stress.

[3] [A blue runner above the word PHYSICAL STRESS] With vitamins C and E to help protect the body against the effects of physical stress.

[4] [A green circle of three arrows above the word METABOLISM] Contains B-vitamins to aid in the metabolism of fats, carbohydrates and proteins.

(*Id.* at ¶ 18.)  Plaintiffs further allege that defendant's internet advertising and website "corroborates its intent to market Centrum's health benefits . . . by appl[ying] the latest nutritional science to bring you an age-adjusted multivitamin with a broad spectrum of nutrients

that help protect the health of adults 50+" (*id.* at ¶ 19), and strives to "convince consumers that its Products  are scientifically supported" (*id*. at ¶ 20).

Plaintiffs claim that, "unfortunately for consumers, the scientific evidence affirmatively contradicts Defendant's promises to provide positive health benefits.  Accordingly, such representations are unfair, unjust, false, misleading, and deceptive."  (*Id*. at ¶ 21.)  In support, plaintiffs rely on a number of scientific studies and other materials, and to specific statements made therein that, according to plaintiffs, demonstrate the false, misleading and deceptive nature of Centrum's "promises to provide positive health benefits."  (*Id*.)  They are:

A December 2013 Editorial, titled *Enough is Enough: Stop Wasting Money on Vitamin and Mineral Supplements*, published in the Annals of Internal Medicine, which states: "[W]e believe that the case is closed – supplementing the diet of well-nourished adults with (most) mineral or vitamin supplements has no clear benefit and might even be harmful;" and that "there were no differences between the multivitamin and placebo groups in overall cognitive performance or verbal memory."  (*Id. at ¶* 22.)

An article from that same issue of Annals of Internal Medicine, captioned "Original Research" and titled *Long-Term Multivitamin Supplementation and Cognitive Function in Men*, that states that study data "do[es] not provide support [for] use of multivitamin supplements in the prevention of cognitive decline."  (*Id.* at ¶ 23.)

A second article from that same issue, captioned "Review," and titled *Vitamin and Mineral Supplements in the Primary Prevention of Cardiovascular Disease and Cancer: An Updated Systemic Evidence Review for the U.S. Preventive Services Task Force*, that states that there was "no evidence of an effect of nutritional doses of vitamins and minerals on CVD [cardiovascular disease], cancer or mortality in healthy individuals without known nutritional deficiencies."  (*Id.* at ¶ 24.)

A third article from the same issue, captioned "Original Research" and titled *Oral High-Dose Multivitamins and Minerals after Myocardial Infarction*, that states "a 28-component, high-dose oral multivitamin and multimineral regimen used as secondary prevention in patients who have had MI [myocardial infarction] did not statistically significantly reduce cardiovascular events."  (*Id.* at ¶ 25.)

A 2010 Harvard Medical School Special Health Report, titled *The Truth About Your Immune System* ("Harvard Study"), which makes the following assertions:  1) "Vitamins and supplements are incapable of 'bolstering immunity.'" ;[1]  2) "There isn't any

---

[1] The actual passage from the Harvard Study reads as follows:  "Many herbal preparations and other supplements claim to 'support immunity' or otherwise boost the health of your immune system. . . . [T]hus far, there is  no

evidence-based science behind the conception 'boosting' immunity beyond what our finely tuned immune system already provides;" 3) "It is an unwarranted claim that ingesting more of these vitamins will translate into better immune function." (*Id.* at ¶ 26.)

Finally, a pre-suit demand letter to defendant from the non-profit consumer advocacy group the Center for Science in the Public Interest ("CSPI Letter"), citing one of its own "Nutrition Action HealthLetters," stating, "[a]s measured by the number or length of illnesses, taking multivitamins does not affect immunity." (*Id.* at ¶ 27.)

Plaintiffs conclude that "science-based evidence contradicts the promises made on [ ] Centrum's labels," and that a reasonable consumer who purchases Centrum, "believing that it will provide the benefits as so promised . . . would be deceived by Centrum's false and misleading claims because the science-based evidence directly contradicts Centrum's promises." (*Id.* at ¶ 29.)

### B.    Procedural History

Kardovich, Chui, and Chang bring various individual and class claims under state law centered on these alleged false and misleading representations as follows: 1) unjust enrichment under New York common law on behalf of plaintiffs and the Nationwide Class;[2] 2) negligent misrepresentation under New York common law on behalf of plaintiffs and the Nationwide Class; 3) violation of the New York General Business Law § 349 (the "GBL") on behalf of Chui and the New York Class;[3] 4) unjust enrichment under New York common law on behalf of Chui and the New York Class; 5) negligent misrepresentation under New York common law on behalf

---

evidence that they actually bolster immunity to the point where they protect against infection and disease." (Harvard Study at 29; Am. Class Action Compl. ¶ 26 n. 20.)

[2] The proposed Nationwide Class consists of all persons in the United States who purchased Centrum during the period of December 27, 2007, to the date of class certification for their own or household use rather than resale or distribution, other than defendant, any entity that has a controlling interest in defendant, and defendant's current or former directors, officers, counsel, and their immediate families; governmental entities; and, the judges to whom this case is assigned and any immediate family members thereof. (Am. Class Action Compl. at ¶ 34.)

[3] The proposed New York Class consists of all New York residents who purchased Centrum during the period of December 27, 2007, to the date of class certification for their own or household use rather than resale or distribution, excluding defendant, any entity that has a controlling interest in defendant, and defendant's current or former directors, officers, counsel and their immediate families; governmental entities; and, the judges to whom this case is assigned and any immediate family members thereof. (*Id.* at 35.)

4

of Chui and the New York Class; 6) violation of the Illinois Consumer Fraud and Deceptive

Business Practices Act, 815 ILCS § 505/1, *et seq.* (the "ICFA") on behalf of Kardovich and the

Illinois Class;[4] 7) unjust enrichment under Illinois common law on behalf of Kardovich and the

Illinois Class; 8) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §

1750, *et seq.* (the "CLRA") on behalf of Chang and the California Class;[5] 9) violation of the

California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (the "FAL") on behalf

of the California Class; and 10) violation of the California Unfair Competition Law, Bus. & Prof.

Code § 17200, *et seq.* (the "UCL") on behalf of Chang and the California Class.  (Am. Class

Action Compl. at ¶¶ 41–109.)

   Defendant Pfizer has moved to dismiss all of plaintiffs' claims, on several grounds:

1) plaintiffs have failed to allege any false statements or deceptive acts by defendant; 2) all

claims are preempted under the Nutrition Labeling and Education Act of 1990 (the "NLEA"), or

in the alternative, should be referred to the Food and Drug Administration (the "FDA") pursuant

to the doctrine of primary jurisdiction; 3) Chui lacks the requisite "special relationship" with

defendant to state a claim for negligent misrepresentation under New York law, and has not pled

that defendant received the requisite direct benefit from her purchase of Centrum to state a claim

for unjust enrichment under New York law; 4) Kardovich and Chang have not pled sufficient

connections to New York to sustain their claims for negligent misrepresentation or unjust

---

[4] The proposed Illinois Class consists of all Illinois residents who purchased Centrum during the period of December 27, 2008 to the date of class certification for their own or household use rather than resale or distribution, excluding defendant, any entity that has a controlling interest in defendant, and defendant's current or former directors, officers, counsel and their immediate families; governmental entities; and, the judges to whom this case is assigned and any immediate family members thereof.  (*Id.*)

[5] The proposed California Class consists of all California residents who purchased Centrum during the period December 27, 2009 to the date of class certification for their own or household use rather than resale or distribution, excluding defendant, any entity that has a controlling interest in defendant, and defendant's current or former directors, officers, counsel and their immediate families; governmental entities; and, the judges to whom this case is assigned and any immediate family members thereof.  (*Id.*)

enrichment under New York law; and 5) Chui's and Kardovich's claims under New York and Illinois common law, respectively, fail because they are based on the same misconduct that underlies their other claims.  Furthermore, defendant contends that if the Court finds that any of plaintiffs' allegations are sufficient to withstand the motion to dismiss, the Court should strike plaintiffs' nationwide class allegations for failure to satisfy the requirements of Federal Rule of Civil Procedure 23.  (Def. Mem. Supp. Mot. Dismiss.)

In response, Kardovich and Chang concede that they lack sufficient connections to New York and have withdrawn their New York unjust enrichment and negligent misrepresentation claims.  (Pls. Mem. Opp'n at 26 n.18.).   Plaintiffs otherwise oppose defendant's motion in all respects.

For the reasons stated below, defendant's motion to dismiss is granted as plaintiffs have failed to plausibly allege any false statements or deceptive acts by defendant Pfizer.  As such, the Court does not reach any other ground for dismissal.  Plaintiffs will be given an opportunity to file a formal motion setting forth why leave to amend should be granted.

### C.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to examine the legal, rather than factual, sufficiency of a complaint.  Generally, under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted).  A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570).  The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663–64 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

For claims premised on fraud, pleadings are also subject to the heightened standard of Rule 9(b), under which a plaintiff must state with particularity the circumstances constituting the alleged fraud.  This heightened requirement requires a complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).  Courts have distilled this formulation to the "who, what, when, where, and how: the first paragraph of any newspaper story." *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 520 (S.D.N.Y. 2014) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

7

In deciding defendant's motion to dismiss, the Court may consider on any of the following: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence."  *Nasso v. Bio Reference Labs., Inc.*, Case No. 11-CV-3480 (JFB), 2012 WL 4336429, at *3 (E.D.N.Y. Sept. 24, 2012) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57) (S.D.N.Y. 2003) (internal citations omitted).

### D.      False, Misleading or Deceptive Statements or Acts

Plaintiffs' claims are pled under the laws of three different states.  While those statutes do differ in some ways, the "core element of each of plaintiffs' causes of action is the existence of a false statement or deceptive act."  (Def. Mem. Supp. Mot. Dismiss at 10); *see Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) ("Under New York law, [one of] the elements for a negligent misrepresentation claim [is] that . . . the defendant made a false representation that he or she should have known was incorrect . . . ."); *Crawford v. Franklin Health Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) ("To state a claim under GBL § 349, a plaintiff must prove . . . that the challenged act or practice . . .was misleading in a material way . . . ."); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) ("[One of the elements of a claim under the ICFA [is] . . . a deceptive or unfair act or practice by the defendant . . ."); *Frenzel v. AliphCom*, Case No. 14–CV–03587 (WHO), 2014 WL 7387150, at *7 (N.D. Cal. Dec. 29, 2014) ("The standard for all three statutes [the CLRA, UCL, and FAL] is

the 'reasonable consumer' test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue.").

In this case, plaintiffs assert that Centrum's promises to provide positive health benefits are "false, misleading and deceptive" because they are "affirmatively contradict[ed]" by the scientific evidence cited in the complaint.  (Am. Class Action Compl. at ¶ 21.)  Defendants contend that the scientific evidence in no way renders false, misleading, or deceptive any representation or practice regarding Centrum's health benefits as "there is a fundamental mismatch between these studies and the Centrum statements that plaintiffs attack, which make no promises regarding these illnesses."  (Def. Mem. Supp. Mot. Dismiss at 10.)  The Court agrees with defendant.

### E.    Discussion

The scientific materials presented by plaintiffs, and specifically, the statements from those materials on which plaintiffs rely to establish the alleged fraudulent nature of Centrum's promises, 1) specifically address cancer, cardiovascular problems, and cognitive function, wholly different health issues than those underlying the representations made by defendant with regard to Centrum's health benefits, or 2) address the health benefits of products other than multivitamins – food, herbal preparations, packaged drinks, and the like.  Because of these "mismatches," and other issues,[6] the science does not undercut Centrum's statements regarding its health benefits, and thus, plaintiffs have failed to raise a plausible claim that Centrum's representations are false, deceptive, or misleading under the standards set out in the various state laws invoked here.

_____

[6] As discussed, *infra*, plaintiffs also rely on materials that are not scientific studies at all.  They include an editorial commenting on a particular set of research studies, as well as assertions proffered by a consumer advocacy organization in a settlement demand letter sent in anticipation of litigation to Pfizer.

The specific claims made with regard to Centrum's alleged health benefits focus on the benefits of specific vitamins on "the normal function of the immune system," "free radical damage caused by environmental stress," "the metabolism of fats, carbohydrates and proteins," "vitality" and "energy support," and "the effects of physical stress."  The three articles from the Annals of Medicine, as evidenced by their titles and their content, plainly address the impact of vitamins on three specific health issues:  *cognitive decline*, *cardiovascular disease* and *cancer*. As is evident, Centrum makes no claims at all as to its benefits regarding these medical conditions, and plaintiffs point to none in their complaint.

As illustration, one study concludes that there is "no evidence of an effect of nutritional doses of vitamins and minerals on CVD [cardiovascular disease], cancer or mortality in healthy individuals without known nutritional deficiencies."  (Am. Class Action Compl. at ¶ 24.) Another suggests that study data "do[es] not provide support [for] use of multivitamin supplements in the prevention of cognitive decline."  (*Id*. at ¶ 23.)  Simply put, these studies concerning specific medical conditions in no way correlate to, let alone contradict as plaintiffs allege, the unrelated claims made by Centrum about its health benefits.  As here, where plaintiffs point to scientific studies that they allege actually disprove a product's claims, such a stark disconnect between the scientific studies and the claims made about Centrum's benefits is fatal to plaintiffs' complaint.  *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 457–58 (distinguishing between product claims that lack scientific support and those that are actually contradicted by scientific evidence); *see also Eckler*, 2012 WL 5382218, at *3 (same).

Plaintiffs do not squarely address this disconnect in their opposition to defendant's motion.  Instead, they say:

> Defendant misconstrues Plaintiffs' cited science narrowly, so as to make it appear
> that the studies only apply to cognitive decline, cardiovascular disease and cancer.

10

> This misses a broader point for which the science also stands—a point the Amended Complaint clearly alleges.  The science, as synthesized in the *Enough is Enough* article, proves ". . . supplementing the diet of well-nourished adults with (most) mineral or vitamin supplements has no clear benefit and might even be harmful."

(Pls. Mem. Opp'n at 13–14.) There are two problems with this argument.

First, even if the claims about Centrum can be broadly construed as promising wide-ranging health benefits, they cannot plausibly be interpreted to promise health benefits in every respect.  As the court explained in *Eckler v. Wal-Mart Store, Inc.*:

> [T]he Court cannot accept that the studies [plaintiff] cites lend "facial plausibility" to her claims that the [the product's] representations are false or misleading.  The studies allegedly show that glucosamine doesn't alleviate the symptoms of osteoarthritis in the hip and knee.  That is a very particular showing with respect to a degenerative joint disease, and in the Court's judgment it doesn't address the far more general claim – which is made by the [product's] representations – that glucosamine is good for the body's joints.

No. 12-CV-727 (LB) (MDD), 2012 WL 5382218, at *7 (S.D. Cal. Nov. 1, 2012) (quoting *Iqbal*, 556 U.S. at 678)).

Second, it does not rely on the science itself.   The broad assertion that "supplementing the diet of well-nourished adults with (most) mineral or vitamin supplements has no clear benefit and might even be harmful" is from the article, *Enough is Enough*.  (Am. Class Action Compl. ¶ 22.)  As plaintiffs themselves carefully note, in this article, "the science [is] *synthesized*, " which suggests that the underlying studies have been subjected to second-hand analysis by the article's authors in an effort to distill and harmonize their many different points.  Further compounding the issue, the article is clearly captioned as an "*Editorial*," which suggests that its pronouncements are the opinions of its authors and not the conclusions drawn from the science itself.

Perhaps recognizing these concerns, plaintiffs point to additional statements from the studies themselves in an effort to bolster the false or misleading nature of any claim by Centrum of wide-ranging nutritional benefits.[7]  (Pls. Mem. Opp'n at 14−15.)  Yet, these statements also relate to the impact of vitamins on cancer, cardiovascular disease, mortality, and cognition.  This is not surprising given the specific focus of the studies themselves.  Again, as in *Eckler*, the results of studies on particular diseases or conditions do not lend facial plausibility to far more general health benefit claims.

Finally, the parties make much of Centrum's claim relating to immunity, which contains an orange shield above the word "IMMUNITY", and the text "with antioxidants to support the normal function of the immune system" on the product's packaging.  This, plaintiffs claim, is false, misleading, and deceptive, relying first on the Harvard Medical School Special Health Report, titled *The Truth About Your Immune System*, which makes, *inter alia*, the following assertions:  1) "There isn't any evidence-based science behind the concept of 'boosting' immunity beyond what our finely tuned immune system already provides;" and 2) "It is an unwarranted claim that ingesting more of these vitamins will translate into better immune function." (*See* Am. Class Action Compl. at ¶ 26.)  Plaintiffs also rely on a pre-suit demand letter to defendant from CSPI, citing one of its own "Nutrition Action HealthLetters," stating, "[a]s measured by the number or length of illnesses, taking multivitamins does not affect immunity." (*Id.* at ¶ 27.)

But once again, plaintiffs' claims regarding immunity suffer from the same fatal flaws. First, there is a disconnect between the scope of Centrum's claim and the conclusions of the Harvard Study.  While Centrum claims only to "support *normal function* of the immune system,"

---

[7] The Court notes that plaintiffs do not specifically rely on some of these statements in their complaint.  *See, e.g.,* Pls. Mem. Opp'n at 14, n.10, 12.

the study, and the statements from it on which plaintiffs rely, suggest that immune function cannot be "boosted " nor can ingesting vitamins translate into "better immune function." (*Id*. at ¶ 26.) Indeed, in discussing the effect of vitamins on the immune system, the study consistently focuses on whether ingesting vitamins will *improve* immune function, consistently using the following types of phrases throughout the immunity discussion:

> Is it possible to . . . make your immune system *stronger*?

> For now, there is no scientifically proven direct links between diet or lifestyle and *enhanced* immune function.

> One important question is whether dietary supplements may help older people maintain a *healthier* immune system. So far, there is no evidence that taking extra amounts of any vitamin will *boost* the immune response or protect against infection in any way.

(Harvard Study at 26, 28 (emphasis added).) Of course, Centrum makes no claim that it improves immune function. As its packaging says, it claims to support normal immune function.

In addition, there is, perhaps, a more fundamental disconnect at work here. The statements from the Harvard Study on which plaintiffs rely to prove the false and misleading nature of Centrum's immunity claim relate to "herbal preparations and other supplements," and "food products, packaged drinks, and even menu items that are labeled as 'supporting immunity,' 'boosting immunity,' or providing a 'defense' against germs." The specific portions of the Harvard Study on which plaintiffs rely, (*see* Am. Class Action Comp. at ¶ 26), address the impact of *these* products on immune function, and maintain, for example, that "most of these products just contain vitamins and minerals that most people get as part of a normal, healthy diet." (Harvard Study at 28.) It is with regard to these products that the Harvard Study concludes, "it is an unwarranted stretch of logic to claim that ingesting more of these vitamins will translate into better immune function." (*Id*.)

In their complaint, plaintiffs also point to statements in a demand letter from CSPI to debunk Centrum's immunity claim.  (Am. Class Action Compl. at ¶ 27.) Yet, plaintiffs do not provide the actual studies on which these assertions are based, and thus, these unsupported statements do nothing to support the plausibility of plaintiffs' claim or the particularity standard required under Rule 9(b).  *See Padilla v. Costco*, Case No. 11 C 7686 (JWH), 2012 WL 2397012 at *4 (N.D. Ill. June 21, 2012) (failure to identify, discuss, or attach scientific studies that demonstrate how representations were fraudulent does not satisfy Rule 9(b)).

In reaching its conclusions, the Court is fully mindful that issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss, and the Court has not considered them here.  *Hughes*, 930 F. Supp. 2d at 461–62 ("[I]ssues concerning the weight that should be given to this study cannot be resolved on a motion to dismiss . . . ."); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) ("Whether or not the studies support plaintiff's proposition that it is 'biologically impossible' to rebuild cartilage is an issue of fact the Court cannot resolve on a motion to dismiss."); *Pearson v.Target Corp.*, Case No. 11-CV-7972, 2012 WL 7761986, at *2 (N.D. Ill. Nov. 9, 2012) ("[W]hether or not the proffered studies are applicable to Up & Up Triple Strength is a question of fact that I do not decide at this stage.)

However, "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146−47 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 1586 (2013).  The deficiencies in plaintiffs' complaint go to the very heart of the plausibility standard under *Iqbal*, and the requirement pursuant to Rule 9(b) to plead with specificity claims such as those alleged here.  Plaintiffs have chosen to use scientific studies in an effort to raise plausible inferences that Centrum's claimed health benefits are simply not true.

14

Because the studies cited do not so do, as discussed herein, all of plaintiffs' claims fail to meet the standards under both Rule 12(b)(6) and Rule 9(b).  As such, the Amended Class Action Complaint must be dismissed in its entirety.

### F.  Leave to Amend

In a concluding footnote in their opposition papers, plaintiffs request leave to amend. (Pls. Mem. Opp'n at 32 n.19.)  Of course, leave to amend should be freely given absent any apparent or declared reason.  Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, *etc.*—the leave sought should, as the rules require, be 'freely given.'").  Here, however, there is some basis to believe that an amendment would be futile. Again, as previously noted, plaintiffs have attempted to raise plausible claims by demonstrating that Centrum's claimed health benefits are affirmatively false through reliance on specific scientific studies.  Neither those claims, nor those studies will change.  Thus, it may be the case that any proper amendment would be futile.

As such, should plaintiffs seek to amend, they shall do so by formal motion, within thirty (30) days of the date of this Memorandum and Order, setting forth the legal bases as to why leave should be granted, and including a proposed Second Amended Class Action Complaint captioned as such.  Defendant shall respond to such motion within thirty (30) days of its receipt. Any reply shall be made within fourteen (14) days of receipt of defendant's opposition.

**CONCLUSION**

For the reasons stated in this Memorandum and Order, defendant's motion to dismiss (Doc. No. 17) is granted, and the Amended Class Action Complaint is hereby dismissed.  Should plaintiffs seek to amend, they shall do so by formal motion, within thirty (30) days of the date of this Memorandum and Order, setting forth the legal bases as to why leave should be granted, and including a Proposed Second Amended Class Action Complaint captioned as such.  Defendant shall respond to such motion within thirty (30) days of its receipt.  Any reply shall be made within fourteen (14) days of receipt of defendant's opposition.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
      March 31, 2015

_____
ROSLYNN R. MAUSKOPF
United States District Judge

16